Argued and submitted June 1, land use final order on remand affirmed
June 28, 2012

WEBER COASTAL BELLS LIMITED PARTNERS,
an Oregon limited partnership;
Jantzen/Angel, LLC;
Northeast Coalition of Neighborhoods
and Coalition for a Livable Future,
*Petitioners below*,
*and*

Plaid Pantries, Inc.,
*Petitioner*,

*v.*

METRO
and TriMet,
*Respondents.*

(LUBA 2011-080, 2011-081,
2011-082, 2011-083; SC S059872)

282 P3d 822

Michael Lilly, Beaverton, argued the cause and filed the memorandum for petitioner Plaid Pantries, Inc.

Mark J. Greenfield, Portland, argued the cause and filed the response for respondent TriMet.

Richard P. Benner, Portland, argued the cause and filed the response for respondent Metro.

DE MUNIZ, J.

**DE MUNIZ, J.**

Plaid Pantries, Inc. (Plaid Pantries), argues that the land use final order that Metro adopted after a remand from this court does not comply with the applicable statutory standards. *See Weber Coastal Bells v. Metro*, 351 Or 548, 273 P3d 95 (2012) (affirming prior land use final order in part and remanding in part). Metro and Tri-County Metropolitan Transit District of Oregon (TriMet) assert that the land use final order is legally sufficient. For the reasons that follow, we affirm the land use final order.

This court discussed the facts and procedural posture of this case more completely in *Weber Coastal Bells*. Briefly, they are as follows.

This case involves the construction of one part of the South North MAX Light Rail Project, which is intended to establish a light rail line from Clackamas Town Center in Happy Valley, Oregon, to Vancouver, Washington, by way of downtown Portland. 351 Or at 550. The legislature passed legislation in 1996 to facilitate completion of the South North MAX Light Rail Project. Or Laws 1996, ch 12, § 2. That legislation established procedures to be used to adopt what is known as a "land use final order"[1] and created a system for appellate review of such an order. *Id.* §§ 6-7 (adoption of land use final order); *id.* §§ 9-10 (review first by Land Use Board of Appeals, then by Supreme Court).

In this case, Metro originally adopted a land use final order relating to the Columbia River Crossing Project, the part of the South North MAX Light Rail Project that extends the light rail from north Portland to the Oregon/Washington state line on the Columbia River. *Weber Coastal*

---

[1] The 1996 act provides:

"'Land use final order' means a written order or orders of the [Metro] council deciding:

"(a) The light rail route for the project or project extension, including its location;

"(b) Stations, lots and maintenance facilities for the project or project extension, including their locations; and

"(c) The highway improvements for the project or project extension, including their locations."

Or Laws 1996, ch 12, § 1(13).

*Bells*, 351 Or at 552. As relevant to the matters before the court, the land use final order approved replacing the existing Interstate 5 (I-5) bridges across the Columbia River with two new bridges; the light rail line is to be placed on the lower deck of one of the bridges. *Id.* at 552-53.

Plaid Pantries and other parties challenged the land use final order before the Land Use Board of Appeals (LUBA). The parties made a number of arguments before LUBA, one of which was that Metro had exceeded its statutory authority in adopting the land use final order because the order purported to approve parts of the project that lay outside the Portland metropolitan urban growth boundary, specifically, the portions of the project between the north shore of Hayden Island and the Oregon/Washington state line in the middle of the Columbia River. *See Weber Coastal Bells Ltd. Partners v. Metro*, 64 Or LUBA 221, 229 (2011) (so noting).

LUBA agreed with Plaid Pantries and the other parties on that point. LUBA held that Metro had exceeded its authority under the 1996 act in approving a project that was not located entirely within the urban growth boundary. *Id.* at 230-31. LUBA remanded the part of the land use final order that approved the parts of the project located outside the urban growth boundary and affirmed the remainder of the land use final order. *Id.* at 249.

Two parties sought review in this court of LUBA's decision to affirm the remainder of the land use final order. The exact nature of the arguments made by those parties is not relevant to the matter currently before this court. It is sufficient to note only that this court rejected those arguments. *See Weber Coastal Bells*, 351 Or at 562 (so noting). Plaid Pantries did not seek review in this court of LUBA's decision. Although this court had rejected all of the challenges presented to it regarding the land use final order, no party had raised any issue as to the propriety of LUBA's conclusion that Metro had exceeded its statutory authority in approving parts of the project that lay outside the urban growth boundary. *Id.* at 550 n 1. Consequently, this court affirmed the land use final order in part and remanded in part, consistent with the LUBA opinion. *Id.* at 562.

Metro then adopted a land use final order on remand. *See* Or Laws 1996, ch 12, § 10(4) ("If the court remands, the [Metro] council shall respond as to those matters remanded by adopting by resolution a land use final order on remand."). The land use final order on remand removed the parts of the project that extended beyond the urban growth boundary, as directed by LUBA. The order on remand, however, also included the following findings:

> "Because the provisions of HB 3478 do not apply to the section of the Columbia River Crossing segment of the South/North Project between the UGB and the state line, the Columbia River Crossing Project light rail facilities and highway improvements to be located within this area must gain authorization through the usual land use decision-making processes. As it found in its findings supporting the 2011 LUFO, the Council finds that this has already occurred. Specifically, it finds that the new I-5 bridges, the light rail alignments and I-5 widening between the northern shoreline of Hayden Island and the Oregon/Washington state line are authorized in Metro's acknowledged 2035 Regional Transportation Plan (RTP) and the City of Portland's acknowledged Transportation System Plan (TSP)."

In adopting the land use final order on remand, Metro necessarily rejected Plaid Pantries' objection, made on remand, that those findings were not supported by substantial evidence and that they were erroneous as a matter of law.

As required by the 1996 act, Metro immediately filed a copy of the land use final order on remand with this court. *See id.* (so requiring). Plaid Pantries timely filed a memorandum with this court, renewing its LUBA arguments that the land use final order on remand did not comply with the 1996 act. *See id.* § 10(5) (permitting such memoranda). Metro and TriMet have responded and assert that the order does comply.

Before we turn to the merits of the arguments presented by Plaid Pantries, we first address a standing issue raised by Metro and TriMet. They contend that Plaid Pantries lacks standing to challenge the land use final order on remand because it had not previously petitioned this

court to review LUBA's decision. Accordingly, they contend, Plaid Pantries is not a "party" entitled to file a memorandum under Oregon Laws 1996, chapter 12, section 10(5).

The 1996 act provides, in part:

> "If the court remands, the court shall retain jurisdiction over the matters remanded. Within 14 days following adoption of the land use final order on remand, *the parties before the court* may submit memoranda to the court with respect thereto and shall personally deliver copies of the memoranda to other parties before the court."

Or Laws 1996, ch 12, § 10(5) (emphasis added). Standing alone, the reference to "the parties before the court" might suggest a legislative intent to limit standing in a way that would exclude Plaid Pantries from appearing here.

Plaid Pantries points out, however, that it was not required to file anything with this court to be considered a party to the prior proceedings before this court. Under the 1996 act, once the other parties filed their petition for review with this court, Plaid Pantries automatically became a party by virtue of its previous appearance before LUBA:

> "If a petition for review has been filed, then within 14 days thereafter, any other party appearing before the Board may, but need not, file a response to the petition for review. In the absence of a response, the party's brief before the board shall be considered as the response."

Or Laws 1996, ch 12, § 10(2). Plaid Pantries thus was not required to file a specific document to appear in this court; its brief before LUBA automatically constituted a response. We therefore conclude that Plaid Pantries has standing to challenge the land use final order on remand.

We turn to Plaid Pantries' arguments on the merits. Plaid Pantries asserts that the findings in the land use final order on remand that the new I-5 bridges already had received land use approval are not supported by substantial evidence in the record and exceeded Metro's authority. Plaid Pantries asserts that those findings are "intended [by Metro] to support a later claim that the City is estopped from requiring additional land use reviews and approvals[.]"

On the merits, Metro and TriMet maintain that Plaid Pantries reads the findings more broadly than they actually are, while simultaneously failing to recognize the significance of certain steps already taken by the City of Portland and Metro. Metro and TriMet concede that further land use decisions—including the need to obtain permits (and meet conditions required by those permits)—will be necessary for the new I-5 bridges to be *constructed*. The land use final order on remand, however, does not find that all land use decisions necessary for *construction* have occurred; it merely finds that the bridges have land use *approval*. The findings to that effect are factually accurate, Metro and TriMet contend, because both Metro and the City of Portland have made land use decisions regarding the need for the new bridges in the form of Metro's 2035 Regional Transportation Plan and the City of Portland's Transportation System Plan.

As applicable to this case, this court may remand a land use final order only to the extent that it finds (among other things) that Metro either exceeded its statutory authority or made a decision in the land use final order regarding the light rail route, the associated light rail facilities, or the highway improvements that was not supported by substantial evidence in the record. *See* Or Laws 1996, ch 12, § 9(12)(a) (listing standards applicable to review by LUBA);[2] *id.* § 10(4), 10(5) (directing this court to use same standards as LUBA). All other parts of the land use final order must be affirmed. *Id.* § 9(12)(c); § 10(4).

In this case, we need not determine whether the findings challenged by Plaid Pantries are factually accurate, because those findings are without any legal significance, as Metro and TriMet concede. LUBA already has held that the land use final order under the 1996 act cannot apply to

---

[2] Section 9(12)(a) of the 1996 act provides for remand only if the reviewing body finds that Metro:

"(A) Improperly construed the criteria [for adopting a land use final order promulgated by the Land Conservation and Development Commission];

"(B) Exceeded its statutory or constitutional authority; or

"(C) Made a decision in the land use final order on the light rail route, on stations, lots or maintenance facilities, or the highway improvements, including their locations, that was not supported by substantial evidence in the whole record."

those parts of the project that lie outside the Portland urban growth boundary, and that holding was not challenged on review in this court. The land use final order on remand itself recognizes the binding nature of that limitation, expressly stating:

> "Because the provisions of [Or Laws 1996, ch 12] do not apply to the section of the Columbia River Crossing segment of the South/North Project between the [urban growth boundary] and the state line, the Columbia River Crossing Project light rail facilities and highway improvements to be located within this area must gain authorization through the usual land use decision-making processes."

The additional finding that land use authorization "has already occurred" through "Metro's acknowledged 2035 Regional Transportation Plan (RTP) and the City of Portland's acknowledged Transportation System Plan (TSP)," as well as other similar statements in the land use final order on remand, thus are of no legal effect whatsoever. Those bridges are outside the Portland urban growth boundary. As a result, Metro and TriMet concede that those findings are "surplusage"; they are "extraneous to and not required by the decision on remand."

For that reason, we need not decide whether the findings challenged by Plaid Pantries are accurate or inaccurate. Those findings may reflect Metro's and TriMet's position regarding the need for land use approval, but they are mere assertions with no additional legal effect; they do not bind Plaid Pantries or the City of Portland. In making those statements in the land use final order on remand, Metro neither exceeded its authority nor made any decision on the light rail route, associated light rail facilities, or highway improvements that was not supported by substantial evidence in the record. *See* Or Laws 1996, ch 12, § 9(12)(a) (listing standards of review). The legislature has directed this court to affirm all parts of a land use final order that are not remanded, *id.* § 10(4). Accordingly, we affirm the land use final order on remand in its entirety.

The land use final order on remand is affirmed.